IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILFREDO BRITO,<br><br>                Petitioner,<br><br>        vs.<br><br>DAVID UNGER,[1] Superintendent,<br>Wyoming Correctional Facility,<br><br>                Respondent. | No. 9:09-cv-00986-JKS<br><br>MEMORANDUM DECISION |

        Wilfredo Brito, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under

28 U.S.C. § 2254.  Brito is currently in the custody of the New York State Department of

Corrections and Community Supervision, incarcerated at the Wyoming Correctional Facility.

Respondent has answered, and Brito has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

        In January 2006 Brito was convicted upon a guilty plea in the Onondaga County Court of

two counts of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal

Law § 220.16[1], [12]) and one count of Criminal Possession of a Controlled Substance in the

Seventh Degree (N.Y. Penal Law § 220.03).  The trial court sentenced Brito to a determinate

prison term of nine years, followed by five years of post-release supervision.  The Appellate

Division, Fourth Department, affirmed Brito's conviction and sentence, and the New York Court

---

        [1] David Unger, Superintendent, Wyoming Correctional Facility, is substituted for
Anthony Boucaud, Superintendent, Altona Correctional Facility.  Fed. R. Civ. P. 25(d).

of Appeals denied leave to appeal on April 17, 2009.[2]  Brito timely filed his Petition for relief in

this Court on August 24, 2009.

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Brito raises two grounds:  (1) that the trial court denied him due process

when it denied his motion to reopen his *Mapp* hearing,[3] and denied additional hearings under

*Issacson*,[4] *Franks*,[5] and *Darden*;[6] and (2) the trial court erred in denying Brito's motion to

suppress the evidence seized as the result of an allegedly illegal arrest in violation of the Fourth

Amendment.  Brito has also requested an evidentiary hearing.  Respondent contends that Brito's

first ground is unexhausted and procedurally barred.  Respondent asserts no other affirmative

defense.[7]

The factual bases for the crimes of which Brito was convicted are well known to the

parties and are unnecessary to the determination of the issues presented in the Petition.

---

[2] *People v. Brito*, 872 N.Y.S.2d 621 (N.Y.A.D.), *lv. denied*, 908 N.E.2d 929 (N.Y. 2009) (Table).  Under New York law, a defendant retains the right to challenge the denial of a motion to suppress notwithstanding the guilty plea on appeal.  N.Y. Crim. Proc. Law § 410.70[2]; *Lefkowitz v. Newsome*, 420 U.S. 283 (1975).

[3] *Mapp v. Ohio*, 367 U.S. 643 (1961).  A shorthand reference to a hearing held on a motion to suppress evidence seized as a result of an unconstitutional search.

[4] *People v. Issacson*, 378 N.E.2d 78 (N.Y. 1978).  A shorthand reference to a hearing under New York procedure to determine whether information received from an informant was as a result of police brutality, coercion, deceit, or deception.

[5] *Franks v. Delaware*, 438 U.S. 154 (1978).  A shorthand reference to a hearing held to determine whether an application for a search warrant contained false statements.

[6] *People v. Darden*, 313 N.E.2d 49 (N.Y. 1974).  A shorthand reference to a hearing under New York procedure for an *in camera* inquiry when the identity of an informer is raised at a suppression hearing.

[7] *See* Rules—Section 2254 Cases, Rule 5(b).

Accordingly, they are not repeated here.  The facts underlying the search that is the subject of this

Petition, as recited by the Onondaga County Court in ruling on Brito's suppression motion, are:

> According to Investigator DiPirro, in late March or early April of this year, an individual described by him as a "concerned citizen" walked into the North Syracuse State Police Barracks and revealed information pertaining to narcotics trafficking.  This person was not known to DiPirro, but did identify himself.  He told Dipirro that [Brito], known to him as Fredo Brito, was trafficking in cocaine.  He described [Brito] and provided [Brito's] address, telephone number and some details of his prior criminal history.  He described to DiPirro two prior occasions within the past five weeks where he had been paid by [Brito] $100.00 plus expenses to drive him on trips to purchase 1-2 kilograms of cocaine.  He also revealed to DiPirro that another such trip was planned for the upcoming weekend. He told DiPirro the reason he was providing this information was because he wanted to stop being Brito's driver and he feared Brito because of his criminal history.  At the conclusion of the interview, DiPirro gave this individual his telephone number and told him to call if the trip was going to take place.

> An investigation conducted by DiPrro [*sic*] based upon the information provided by the informant revealed that an individual by the name of Wilfredo Brito lived at the address provided and Brito's criminal history substantially matched that given by the informant.  The informant telephoned him the next two Saturdays to advise him that planned trips were not going to take place.  On Friday of the week following the second of these calls, the informant again phoned and told DiPirro that a trip to New York City for the purpose of purchasing cocaine was taking place the next day.

> The informant again phoned DiPirro at 6:10 a.m. the next morning to advise that he was picking [Brito] up and that he was sure they were going to obtain drugs. He called again several hours later continuing that the transaction in New York City was taking place.  DiPirro told him to call again after he had seen the drugs or when they were returning to Syracuse.  The informant told DiPirro he was afraid such a conversation would be overheard and that he would text message him instead. DiPirro subsequently received a text message from the informant stating, "I saw it," which DiPirro took to mean the informant had seen the drugs.  DiPirro surreptitiously telephoned the informant a couple of hours later to confirm that everything was in order and they were still on schedule.

> Based upon this information, DiPirro and other Troopers set up surveillance on Route 81 North awaiting the informant's vehicle.  He was in uniform and in a marked patrol car.  Upon observing the informant's vehicle, he activated his lights and effected a stop of the car.  It was occupied by three individuals.  The informant was driving and [Brito] was the front seat passenger.  No violations of the Vehicle and Traffic Law were alleged as a basis for the stop.  After having the individuals exit the car and patting them down for weapons, DiPirro called a K-9 unit to the scene.  Upon an inspection of the informant's car by the K-9, it alerted the troopers

to the presence of illegal narcotics in the area of the car where [Brito] had been seated.  The three individuals were then transported to the Lafayette State Police Barracks and DiPirro made a written application to the Town Justice for the Town of Tully for a search warrant.  The warrant application was based upon DiPirro's own affidavit, which did not name the informant, citing his fear of retaliation by the defendant.  However, DiPirro did set forth in his affidavit a description of the informant's vehicle, including the New York State Registration number and VIN number.  After obtaining a warrant, which stated that the vehicle in question was registered to Kevin J. Schaus, d.o.b. 12/27/72, and authorizing a search of the vehicles and the three individuals therein, DiPirro went to the Lafayette State Police Barracks.  Upon the execution of the search warrant, [Brito] voluntarily surrendered two baggies of cocaine and a $20 bill containing a quantity of cocaine was also recovered from his pants pocket.

Under cross-examination, DiPirro, acknowledged that the registered owner of the vehicle in question, Kevin J. Schaus, was the informant in this case. However, DiPirro denied knowing at the time that Schaus was the subject of an approximately year long state-wide man hunt in a high profile kidnapping case involving a minor by the name of Brittany Fish.[1]  DiPirro also acknowledged that he had neglected to state in his police report that he had received the text message from Schaus indicating that he'd seen the drugs.  Nevertheless, he steadfastly maintained that he had, in fact, received such a text message and that it came from Schaus's cell phone.

_____

[1] Schaus was arrested for the kidnapping of Brittany Fish approximately two days after [Brito's] arrest in this case.  Prior to the date of the instant suppression hearing, Schaus entered a guilty plea in the kidnapping case and received a life term in state prison.[8]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254, this Court cannot grant relief unless the decision of the state court "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court rendered its decision or "was

based on an unreasonable determination of the facts in light of the evidence presented in the State

_____

[8] Docket No. 12-5, pp. 3-5.

court proceeding."[9]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[10]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[11]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[12]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[13]  The Supreme Court has made it clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[14]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[15]  In a federal habeas proceeding, the standard under which this Court must assess the

---

[9] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[10] *Williams*, 529 U.S. at 412.

[11] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[12] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[13] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[14] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[15] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

prejudicial impact of constitutional error in a state court criminal proceeding is whether the error

had a substantial and injurious effect or influence in determining the outcome.[16]  Petitioner "bears

the burden of proving by a preponderance of the evidence that his constitutional rights have been

violated."[17]

Recently the Supreme Court underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[18]

In applying this standard, this Court reviews the last reasoned decision by the state

court.[19]  In addition, the state court's findings of fact are presumed to be correct unless the

petitioner rebuts this presumption by clear and convincing evidence.[20]  Although pre-AEDPA

---

[16] *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[17] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[18] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[19] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[20] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

precedent established that deference is due findings of state appellate courts,[21] the Second Circuit has left the question open with respect to AEDPA cases.[22]  In the absence of a clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, i.e., findings of a state appellate court are presumed to be correct.

## IV.  DISCUSSION

### A.    Evidentiary Hearing

Brito requests that this Court hold an evidentiary hearing to develop additional facts in support of his claim that the trial court erred in denying his *Mapp* motion.  The Supreme Court made clear in *Pinholster* that "review under [28 U.S.C.]  § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."[23]  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."[24]  "If the state-court decision 'identifies the correct governing legal principle' in effect at the time, a federal court must assess whether the decision

---

[21] *See Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[22] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

[23] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[24] *Williams*, 529 U.S. at 437 (quoted with approval in *Pinholster*, 131 S. Ct. at 1401); *see Richter*, 131 S. Ct. at 787 (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions).

'unreasonably applies that principle to the facts of the prisoner's case.'"[25]  As the Supreme Court

noted, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication

resulted in a decision that unreasonably applied federal law to facts not before the state court."[26]

Although under *Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely

precluded, *Pinholster* also made clear that the discretion to grant a request for an evidentiary

hearing is cabined by § 2254(e)(2),[27] which provides:

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless the
> applicant shows that—
>> (A) the claim relies on—
>>> (i) a new rule of constitutional law, made retroactive to cases on
>>> collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered
>>> through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and
>> convincing evidence that but for constitutional error, no reasonable factfinder would
>> have found the applicant guilty of the underlying offense.

Brito's substantive arguments revolve around a central theme—that the informant was

unreliable.  It is far from clear just what additional evidence that was not brought to the attention

of the trial court could be presented in an evidentiary hearing in this Court.  Brito based his

motion to reopen the *Mapp* hearing on two allegedly new, pertinent facts:  "1) the investigating

officer, Inv. DiPirro claims that the 'concerned citizen' informant in this case text messaged Inv.

DiPirro that the 'concerned citizen' allegedly saw cocaine during the visit.  2) the 'concerned

citizen' informant ended up being Kevin Schaus, a serial kidnapper who was the subject of a

---

[25] *Pinholster*, 131 S.Ct. at 1399 (quoting *Williams*, 529 U.S. at 405).

[26] *Id.*

[27] *Id.* at 1400-01.

nationwide manhunt during the time he volunteered this information to the New York State

Police, thus creating a question regarding his motive for 'volunteering' and creating a question

concerning his credibility and 'reliability' as required by the *Aguilar-Spinelli* standard."[28]  In

denying the motion, the Onondaga County Court held:

> The court finds the testimony of Investigator DiPirro extremely credible. According to his testimony there can be no doubt that the informant, Kevin P. Schaus, identified himself to DiPirro from the inception of their contact in late March or early April and that the information provided by Schaus throughout his communications with DiPirro was based upon firsthand observations of [Brito's] illegal drug activity.  In any event, DiPirro's independent investigation and own observations and communications with Schaus corroborated the information provided.  Schaus provided his true identity, address, telephone number and a description of his automobile.  He also provided the identity, address and a partial criminal history of [Brito].  He described in some detail two recent drug transactions in which he was involved with [Brito] in purchasing large quantities of cocaine. DiPirro's investigation confirmed that the information provided by Schaus regarding himself and [Brito] was accurate.  Schaus maintained communication with DiPirro thereafter and when the next trip did occur, he communicated to DiPirro what was transpiring and when he saw the drugs.  Furthermore, the details closely matched the two previous transactions involving [Brito] which Schaus had described.  Although Schaus's identity as the informant was not revealed until the hearing, there can be no question as to his existence.  Therefore, the court finds the information provided by Schaus to DiPirro was reliable and constituted sufficient probable cause for the stop of Schaus's vehicle and the arrest and search of [Brito] on the date in question, irrespective of the search warrant.  In any event, this court's review of the search warrant documents reveals that the application was proper and the warrant was valid.
>
> Furthermore, this court finds Schaus's involvement in the kidnapping of Brittany Fish of no relevance to this case.  [Brito] has provided no factual basis in support of his suppositions that the State Police were aware, or should have been aware, that Schaus was the subject of the state wide man-hunt in the that [*sic*] case or that they engaged in any misconduct in obtaining the information from Schaus leading to [Brito's] arrest.  Moreover, defense counsel had ample opportunity for cross examination of DiPirro with respect to Schaus's involvement in this case at the initial *Mapp* hearing.
>
> It must also be noted that Schaus's name was contained in the body of the search warrant, a copy of which was turned over to defense counsel as part of the People's answer to the motion papers, and that he had already been convicted and

---

[28] Docket No. 12-3, p. 6.

sentenced in the kidnapping case prior to the suppression hearing. Thus, even assuming that defense counsel was unaware of Schaus [*sic*] identity as the informant prior to the hearing, it would have taken minimal effort on the part of defense counsel to locate Schaus in state prison for the purpose of ascertaining whether he held any information favorable to the defense and having him produced as a witness at the hearing.

Based on this Court's factual determination that the stop of the vehicle occupied by [Brito] was supported by sufficient probable cause, and that the search warrant subsequently obtained by the police was valid, [Brito's] motion to suppress the alleged cocaine and cash recovered from him is DENIED in its entirety. [Brito's] supplemental motions to reopen the *Mapp* hearing and for *Darden, Franks* and *lssacson* hearings are also hereby DENIED.[29]

In rejecting Brito's arguments, the Appellate Division held:

[Brito] contends that his arrest was not based upon probable cause inasmuch as the People failed to satisfy the *Aguilar–Spinelli* test with respect to the citizen informant who provided the relevant information to the police. We reject that contention. "[T]he information provided by an identified citizen accusing another individual of the commission of a specific crime is sufficient to provide the police with probable cause to arrest." The reliability and veracity of an identified citizen is presumed, particularly in light of "the criminal sanctions attendant upon falsely reporting . . . information to the authorities." Furthermore, the statement by the identified citizen informant that was against the informant's "own penal interest constituted reliable information for the purposes of supplying probable cause." We accord great deference to the determination of County Court crediting the testimony of the police officer concerning the information provided by the citizen informant.

We have considered [Brito's] remaining contentions and conclude that they are without merit.[30]

Brito's request in this case does not meet the standard for an evidentiary hearing. Not only was Brito accorded an opportunity to present the evidence to the Onondaga County Court, but the court also considered that evidence. Reduced to their essence, Brito's arguments, in both this case and his direct appeal, attack the credibility of the investigating officer's testimony regarding the basis of the traffic stop and in obtaining the search warrant, and the trial court's

---

[29] Docket No. 12-5, pp. 6-7.

[30] *Brito*, 872 N.Y.S.2d at 621-22 (citations omitted).

reliance upon that testimony in denying Brito's suppression motions.  Consequently it cannot be said on the record that the state courts precluded him from developing the factual basis for his claim.[31]

## B.      Exhaustion

In his first ground, Brito contends that the trial court erred in not reopening the *Mapp* hearing and holding further hearings under *Issacson, Franks,* and *Darden*.  Respondent contends that, because Brito failed to properly raise this claim in federal constitutional terms before the state courts, Brito has failed to exhaust his state court remedies.  This Court agrees.

This Court may not consider claims that have not been fairly presented to the state courts.[32]  Unexhausted claims must be dismissed.[33]  The claim must have been presented to the highest state court that may consider the issue presented.[34]  "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief."[35]  A mere appeal to a broad constitutional guarantee, e.g., due process, is insufficient to present the

---

[31] *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself).

[32] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[33] *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005); *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982); *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

[34] *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[35] *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard v. Connor*, 404 U.S. 270 (1971)).

substance of a constitutional claim to the state courts.[36]  A petitioner satisfies the fair presentation

aspect of the exhaustion requirement by presenting the essential factual and legal premises of his

federal constitutional claim to the appropriate state courts.[37]  An issue is exhausted when the

substance of the federal claim is clearly raised and decided in the state court proceedings,

irrespective of the label used.[38]  Exhaustion does not require that Brito have cited the "book and

verse on the federal constitution."[39]  A petitioner who does not cite "book and verse of the

Constitution" may nonetheless "fairly present to the state courts the constitutional nature of his

claim" through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance
> on state cases employing constitutional analysis in like fact situations, (c) assertion
> of the claim in terms so particular as to call to mind a specific right protected by the
> Constitution, and (d) allegation of a pattern of facts that is well within the
> mainstream of constitutional litigation.[40]

In his brief before the Appellate Division, Brito simply argued that:

> Clearly the defense counsel would have preferred to question DiPirro further,
> but was really cut off by the Court.  He moved to have the hearing reopened.
> People v. Hoglen, 162 A.D.2D 1036; People v. Hoglen, 152 AD2d 990 points
> out that it may be error to reopen the suppression hearing.
> For this reason, the Court erred in refusing to reopen the hearing since the
> only information came from DiPirro, who had recorded nothing, leaving a wide

---

[36] *See id.* at 163; *Anderson v. Harless*, 459 U.S. 4, 7 (1982).

[37] *Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009) (citing *Reese*, 541 U.S. at 30-34); *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005).

[38] *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

[39] *Picard v. Connor*, 404 U.S. at 278.

[40] *Daye v. Attorney General of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

situation for the testimony to be tailored to meet the constitutional standards, and, in fact, effectively stated he believed DiPirro to have done so.[41]

This falls far short of the standards governing exhaustion of state court remedies.

Even if a federal claim has not been properly presented to the highest state court or preserved under state law, it will be deemed exhausted if it has become procedurally barred under state law.[42]

In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), we may reach the merits of the claim "only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."[43]

Brito's claim is procedurally barred under adequate and independent state grounds.  In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal.[44]  Brito has already had his one and only direct appeal permitted under New York law.[45]  Because he raised the alleged error on direct appeal, Brito would be precluded from raising it in a N.Y. Criminal Procedure Law § 440.10 motion by § 440.10[2](c) (barring review of a claim that could have been presented on

---

[41] Docket No. 12-6, p. 24.

[42] *See Richardson*, 621 F.3d at 201-02.

[43] *St. Helens v. Senkowski*, 374 F.3d 181, 184 (2d Cir. 2004) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

[44] *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

[45] *See Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001).

13

direct appeal).[46]  Since Brito no longer has any remedy available, his first ground is deemed

exhausted and procedurally barred from review in a federal habeas proceeding.[47]

 To avoid a procedural bar, Brito must demonstrate either cause for the default and actual

prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of

justice.[48]  In the context of overcoming a procedural default, a petitioner must show that a

constitutional violation probably resulted in his conviction despite his actual innocence.[49]  It is

important to note that, in this context, "'actual innocence' means factual innocence, not mere

legal insufficiency."[50]  In this case, having entered a guilty plea admitting to the factual basis

supporting the elements of the crime of which he was convicted, Brito cannot now claim "actual

innocence."

## C. Fourth Amendment Claim

 In his second ground, Brito contends that, because there was a lack of probable cause for

the police to stop him, the search of his person incidental to that stop violated his Fourth

Amendment rights, and the fruits of that search should have been suppressed.  Respondent

---

[46] *Id.*

[47] *Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201-02 (2d Cir. 2010); *see Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

[48] *Coleman*, 501 U.S. at 749-50 (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).

[49] *See Schlup v. Delo,* 513 U.S. 298, 321-27 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray,* 477 U.S. at 496 ("in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[50] *Bousley*, 523 U.S. at 623.

contends that Brito's Fourth Amendment argument is foreclosed by the Supreme Court decision in *Stone*.[51]  This Court agrees.[52]

Under the holding in *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial.[53]  The Second Circuit has made it clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim.[54]  In order to receive habeas review of his Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place, but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process."[55]  A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and is insufficient to give this Court authority to review Fourth Amendment claims.[56]  That New York has in place such procedures is well settled,[57] and Brito has not asserted the existence of an unconscionable breakdown of that process

---

[51] *Stone v. Powell*, 428 U.S. 465 (1976).

[52] The Court notes that, to the extent that Brito's first ground is predicated upon the Fourth Amendment, it is likewise barred under *Stone*.

[53] *Powell*, 428 U.S. at 482.

[54] *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983).

[55] *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

[56] *Id*. at 72.

[57] *See id*.

in this case. Indeed, the record in this case conclusively establishes that Brito was given a full and fair hearing on the merits of his Fourth Amendment Claim.[58]

**D.     Merits**

Even if this Court were to reach the merits of Brito's claims, he would not prevail.  The outcome of the suppression hearing was determined on the basis of credibility.  The Onondaga County Court found the investigating officer to be credible.  This Court is precluded from assessing credibility or weighing the evidence.  In a federal habeas proceeding the court is limited to determining whether there is any evidence in the record, which if accepted as credible by the trier of fact, to support the finding.[59]  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence.[60]  Rather, when "faced with a record of

---

[58] The centerpiece of Brito's argument that he was denied a fair hearing is that his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were somehow violated.  According to Brito in his Petition, the sole record of a crucial text message from the informant to the investigator, DiPirro, that "I saw it," ("it" referring to the drugs) was contained in the arrest warrant [*sic*, the Court assumes that Brito is referring to the search warrant] application that was sealed by the issuing court and denied to Brito during the suppression hearing.  How the search warrant application, containing a reference to a text message the existence of which was testified to by the police officer, is either exculpatory or material is as inexplicable as it is unexplained.  Indeed, in his brief on appeal, Brito contended that his defense counsel was cut off when he asked DiPirro whether it was not true that nowhere in the application is there a reference to the "I saw it" text message.  Docket No. 12-6, p. 10.  Review of the application, which is part of the record in this case, Docket No. 12-1, reveals that there is no reference to the text message in the application.  It is also apparent from the record that defense counsel was aware of this deficiency in the application for the warrant.  More tellingly, Brito did not raise the argument on direct appeal he now raises in this Court.  In fact, on direct appeal, Brito's argument that probable cause was lacking was that the arresting officer's testimony as to his conversation with the informant was unrecorded and unverified.  Docket No. 12-6, pp. 15-23.

[59] *See Schlup*, 513 U.S. at 330.

[60] *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

16

historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[61]

## V.  CONCLUSION AND ORDER

Brito's first ground is unexhausted and procedurally barred, and his first and second grounds do not present questions of constitutional dimension cognizable in a federal habeas proceeding.

**IT IS THEREFORE ORDERED THAT** Brito's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[62]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[63]

The Clerk of the Court is to enter judgment accordingly.

Dated:  October 5, 2011.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[61] *Id.* at 326; *see McDaniel v. Brown*, 130 S. Ct. 665, 673-74 (2010).

[62] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("to obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El*, 537 U.S. at 327).

[63] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.